IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-841

No. COA21-716

Filed 20 December 2022

Alamance County, No. 21 CVS 15

IN THE MATTER OF: THE MCCLATCHY COMPANY, LLC, d/b/a "The News & Observer;" CAROLINA PUBLIC PRESS, INC., d/b/a "Carolina Public Press;" CAPITOL BROADCASTING COMPANY, INCORPORATED, d/b/a "WRAL-TV;" LEE ENTERPRISES, d/b/a "The News & Record;" HEARST PROPERTIES, INC., d/b/a "WXII;" GANNETT CO., INC., d/b/a "The Burlington Times News;" MACKENZIE WILKES, JOHN NORCROSS, and GRACE TERRY, of Elon News Network, petitioners.

Appeal by respondent from order entered 15 June 2021 by Judge Andrew H. Hanford in Alamance County Superior Court. Heard in the Court of Appeals 7 June 2022.

*Envisage Law, by Adam P. Banks and Anthony J. Biller, for respondent-appellant.*

*Stevens Martin Vaughn & Tadych, PLLC, by Michael J. Tadych, Hugh Stevens, C. Amanda Martin, and Elizabeth J. Soja, for petitioners-appellees.*

TYSON, Judge.

The Graham Police Department ("GPD") appeals from the trial court's order authorizing and ordering the release of all custodial law enforcement agency recordings petitioned by media Petitioners pursuant to N.C. Gen. Stat. § 132-1.4A(g) (2021). We vacate the order and remand for additional findings of fact.

**I.  Background**

¶ 2    A group of people participated in a "I am Change" march in Graham on 31 October 2020.  The organizers of the march secured a permit to march, but were not authorized to close and were instructed not to block the public streets of Graham for the march.  When marchers refused to clear an intersection of streets following multiple requests, GPD deployed Oleoresin Capsicum ("pepper spray") canisters to clear the street.

¶ 3    The marchers moved to the grounds of the Historic Alamance County Courthouse.  Speeches were given by organizers and designated speakers.  Before the speeches were concluded, GPD officers  and sheriff's deputies discovered a gas-powered generator providing electricity for a sound system.  The generator was operating within two feet of a gas container, in violation of the fire code.  Officers attempted to disconnect the generator, but attendees resisted the officers' efforts.  The event was declared to be unsafe, dispersal orders were issued, but went unheeded. GPD officers and Alamance County Sheriff's deputies arrested 23 protesters.

¶ 4    The McClatchy Company, LLC, d/b/a The News and Observer Publishing Co., filed an amended petition in Alamance County Superior Court seeking release of custodial law enforcement agency recordings under N.C. Gen. Stat. § 132-1.4A(g) on 2 March 2021.  Joining as petitioners were: Carolina Public Press, Inc., d/b/a Carolina Public Press; Capitol Broadcasting Company, Incorporated, d/b/a WRAL-TV; Lee Enterprises, d/b/a News & Record of Greensboro; Hearst Properties, d/b/a WXII;

Gannett Co., Inc., d/b/a/ The Burlington Times-News; and Mackenzie Wilkes, John Norcross, and Grace Terry of the Elon News Network (collectively with The McClatchy Company, LLC ("Petitioners").

Petitioners sought from the Alamance County Sheriff ("ACS") and GPD (collectively "Respondents') to:

> release of all law enforcement and other recordings leading up to, during and after the "I am Change" march in Graham, NC, occurring on 31 October 2020 from the time the first contact was made with marchers, spectators or media on that date until the last member of law enforcement left the scene. Petitioners' requests include, but are not limited to, recordings from all body worn cameras, dashboard cameras, hand-held recording devices of any kind, drones/unmanned aerial vehicles, stationary cameras, or any other video or audio recording device operated by or on behalf of a law enforcement agency or law enforcement agency personnel as defined by G.S. 1[32]-1.4A(a)(6) when carrying out law enforcement responsibilities at the time of first contact, at the courthouse and around Court Square.

The matter was scheduled for hearing on 8 March 2021. Respondents moved for a continuance, which was allowed. The hearing was rescheduled for 26 April 2021. The trial court also filed an "Order to Provide Custodial Law Enforcement Agency Recording for In-Camera Review", which required Respondents to provide the trial court with a copy of the petitioned recordings "on or before" 12 April 2021 "along with a list of all law enforcement personnel whose image or voice is in the recording[.]"

¶ 7    Respondents were also required to give notice of the petition and hearing "to any law enforcement agency personnel whose image or voice was shown or captured in the recording and to the head of that person's employing law enforcement agency[,]" and to provide the trial court and petitioners' counsel "with a list identifying those portions of the requested recordings to which law enforcement objects to release and all bases for those objections upon provision of the subject recordings for in camera review".

¶ 8    Neither ACS nor GPD appealed this order. ACS submitted its recordings for in-camera review on 18 March 2021. ACS did not file any objections with its submission. GPD submitted its recordings after obtaining an extension of time on 23 April 2021.

¶ 9    GPD listed the following objections to release of the petitioned recordings: (1) "pursuant to N.C.G.S. § 132-1.4A(g)(1)[,]" on the basis of lack of a compelling public interest, since the events at issue had occurred "more than 6 months ago" and were "no longer 'newsworthy' "; (2) "pursuant to N.C.G.S. § 132-1.4A(g)(3)[,]" because petitioners did not seek to " 'obtain evidence to determine legal issues in a current or potential court proceeding' "; (3) "pursuant to N.C.G.S. § 132-1.4A(g)(5)[,]" because the "expansive nature of [p]etitioner[s'] request ensures extraneous footage of march participants will be released[,]" creating "the risk of harm to 'reputation' or 'safety' of protest participants"; and (5) "pursuant to N.C.G.S. § 132-1.4A(g)(6)[,]" on the basis

that "such release creates a threat to the 'fair, impartial, and orderly administration of justice[ ]'" because the "enclosed CLE Recordings contain footage of all individuals arrested by GPD on October 31, 2020." Respondent-GPD also objected to the release of specific footage depicting specific individuals, who were then facing criminal charges following their arrests on 31 October 2020.

¶ 10 The trial court conducted an in-camera review of the submitted recordings between 21-28 May 2021 and scheduled a hearing for 10 June 2021. At the hearing, Respondents argued the following objections against release of the petitioned recordings: (1) law enforcement recordings "are not public records" under N.C. Gen. Stat. § 132-1.4A; (2) "only personal representatives have an absolute right to . . . access . . . these videos"; (3) "[t]he burden [is] slightly less" for "authorized individuals to obtain access to the video[,]" whereas the burden under subsection "g" of the statute "is a bit higher"; (4) the trial court, "in its discretion, can place any sort of additional restriction on top of the release" of such recordings; (6) the matter was no longer newsworthy; (7) the footage sought was available elsewhere; (8) petitioners' request was not specific, but rather "a generic request for all video"; (9) release of the recordings may affect the privacy interests of the individuals depicted therein; (10) there were criminal cases still pending following the 31 October 2020 events; (11) the recordings captured "extraneous footage"; (12) "these videos are available" "for any criminal proceeding" and that petitioners had "not obtained . . . consent" from the

individuals depicted therein to release the footage; (13) release of the petitioned recordings could "reveal information regarding a person that is of a highly sensitive . . . nature" and "may harm the reputation or jeopardize the safety of a person"; (14) "these videos could create a serious threat to the fair and impartial and orderly administration of justice"; and, (15) "releasing this video now interrupts the fair and orderly discovery process" of an ongoing federal lawsuit.

¶ 11        At the close of all arguments, the trial court stated the following:

> I will inform everyone that this Court has given this decision great consideration and has not taken this decision lightly in any way. And I'll refer you to Alamance CV 271 (sic).
>
> . . . .
>
> The Court having considered the applicability of all the standards of G.S. 132[ ]-1.4A(g), has determined the following: That the release of the information is necessary to advance a compelling public interest. The Court finds that there is a compelling public interest in the accountability and transparency of law enforcement officers and that this factor weighs in favor of release.
>
> No. 2, The recording contains information that is otherwise confidential or exempt from disclosure or release under state or federal law. This Court finds this factor is not relevant and does not impact the Court's decision.
>
> No. 3, The person requesting release is seeking to obtain evidence to determine legal issues in a current or potential court proceeding. The Court finds this factor is not relevant and does not impact this decision.
>
> No. 4, Release would reveal information regarding a person

that is of a highly sensitive and personal nature. This Court finds that this factor weighs against release.

No. 5, That release may harm the reputation or jeopardize the safety of a person. This Court finds this factor also to weigh against release.

No. 6, That release would create a serious threat to the fair and orderly administration of justice. This court finds that this factor does weigh in favor of release.

No. 7, Confidentiality is necessary to protect an active internal criminal investigation or potential internal or criminal investigation. This Court finds this factor is not relevant and does not impact the Court's decision.

No. 8, There is good cause shown to release all portions of the recording. This Court finds that the photos and the recordings speak for themselves, and *this Court does not have the authority to [c]ensor this information absent a legitimate or compelling state interest* not to do so. Most importantly this Court gives great weight to transparency and public accountability with regard to police action and considers a failure to release this information to possibly undermine the public interest and confidence in the administration of justice.

In light of the foregoing findings of fact, the Court concludes that the media is authorized to the release of all of the photos and recordings. It is therefore ordered that this petition is granted. *That the custodial law enforcement agencies involved shall release all photos and custodial law enforcement recordings* to the media and that's the order of the Court.

(emphasis supplied).

¶ 12     The trial court filed its written "Order on Petition for Release of Custodial Law Enforcement Agency Recording" on 15 June 2021. **(R pp 216-17)** The order contains

determinations consistent with the court's rendering in open court regarding "the applicability of all of the standards in G.S. 132-1.4A(g)[.]" The trial court found:

> The photos/recordings speak for themselves. *This Court does not have the authority to censor the photos/recordings* absent a compelling governmental interest and none was shown. This Court gives great weight to transparency and public accountability of police action and failure to release the photos/recordings would undermine the public trust and confidence in the administration of justice.

(emphasis supplied)

The trial court ordered Respondents to release "ALL recordings and photographs as indicated on the submissions made to the Court by the custodial law enforcement agencies and without redaction or alteration on or before 2:00 p.m. on Friday June 25, 2021."

GPD appealed the 15 June 2021 "Order on Petition for Release of Custodial Law Enforcement Agency Recording" on 23 June 2021. GPD filed a "Motion for Stay of Order Directing Release of Custodial Law Enforcement Recording Pending Appeal" on 25 June 2021, which was amended on 30 June 2021. Petitioners filed a Motion to Show Cause on 6 July 2021. The trial court granted GPD's motion to stay the 15 June 2021 order and denied Petitioners' Motion to Show Cause. GPD appeals.

## II. Jurisdiction

This Court possesses jurisdiction pursuant to N.C. Gen. Stat. § 7A-27(b)(1) (2021).

### III.    Issue

GPD argues Petitioners' petition was overly broad under N.C. Gen. Stat. § 132-1.4A (2021); the trial court improperly imposed a *de-facto* burden and then shifted it onto Respondents; the trial court misapplied the law and imposed the incorrect legal standard in ordering the unredacted release of all portions of all videos and recordings; the trial court abused its discretion in failing to take reasonable steps to protect against the release of information of a highly sensitive personal nature; and, the trial court frustrated the legislative intent behind N.C. Gen. Stat. § 132-1.4A.

### IV.    Standard of Review

N.C. Gen. Stat. § 132.1.4A(g) provides: "The [trial] court *shall release only those portions of the recording that are relevant to the person's reques*t, and may place any conditions or restrictions on the release of the recording that the court, in its discretion, deems appropriate."  N.C. Gen. Stat. § 132.1.4A(g) (emphasis supplied). The statute mandates express limitations on the release of otherwise non-public and non-personnel records, specifying courts "shall release only those portions . . . relevant," and further provides the trial court "may place any conditions or restrictions on the release." *Id.*

### V.    Analysis

To analyze the parties' arguments, an examination of N.C. Gen. Stat. § 132.1.4A is required.  "The principal goal of statutory construction is to accomplish

the legislative intent." *Lenox, Inc. v. Tolson*, 353 N.C. 659, 664, 548 S.E.2d 513, 517 (2001) (citation omitted). "The best indicia of that intent are the [plain] language of the statute . . . , the spirit of the act and what the act seeks to accomplish." *Concrete Co. v. Bd. of Comm'rs*, 299 N.C. 620, 629, 265 S.E.2d 379, 385 (1980) (citations omitted). "[S]tatutes *in pari materia* must be read in context with each other." *Cedar Creek Enters. v. Dep't of Motor Vehicles*, 290 N.C. 450, 454, 226 S.E.2d 336, 338 (1976) (citation omitted).

¶ 19        "When construing legislative provisions, this Court looks first to the plain meaning of the words of the statute itself[.]" *State v. Ward*, 364 N.C. 157, 160, 694 S.E.2d 729, 731 (2010) (citation omitted). "Interpretations that would create a conflict between two or more statutes are to be avoided, and statutes should be reconciled with each other whenever possible." *Taylor v. Robinson*, 131 N.C. App. 337, 338, 508 S.E.2d 289, 291 (1998) (internal citations, quotation marks, and ellipses omitted).

¶ 20        Further, "where a literal interpretation of the language of a statute will lead to absurd results, or contravene the manifest purpose of the Legislature, as otherwise expressed, the reason and purpose of the law shall control." *State v. Beck*, 359 N.C. 611, 614, 614 S.E.2d 274, 277 (2005) (internal quotation marks omitted) (quoting *Mazda Motors v. Sw. Motors,* 296 N.C. 357, 361, 250 S.E.2d 250, 253 (1979)).

¶ 21        Release of law enforcement photos and recordings is strictly limited by statute

and are neither public records subject to uncontrolled release nor personnel records under our General Statutes. N.C. Gen. Stat. § 132-1.4A(b).

¶ 22     N.C. Gen. Stat. § 132-1.4A(c) provides the limited categories of persons who are authorized to seek release of the law enforcement recordings and records:

> (c) Disclosure; General. — Recordings in the custody of a law enforcement agency *shall be disclosed only as provided by this section.* Recordings depicting a death or serious bodily injury shall only be disclosed as provided in subsections (b1) through (b3) of this section.
>
> A person requesting disclosure of a recording must make a written request to the head of the custodial law enforcement agency that states the date and approximate time of the activity captured in the recording or otherwise identifies the activity with reasonable particularity sufficient to identify the recording to which the request refers.
>
> The head of the custodial law enforcement *agency may only disclose a recording to the following*:
>
> (1) A person whose image or voice is in the recording.
>
> (2) A personal representative of an adult person whose image or voice is in the recording, if the adult person has consented to the disclosure.
>
> (3) A personal representative of a minor or of an adult person under lawful guardianship whose image or voice is in the recording.
>
> (4) A personal representative of a deceased person whose image or voice is in the recording.
>
> (5) A personal representative of an adult person who is incapacitated and unable to provide consent to

disclosure.

> *When disclosing the recording, the law enforcement agency shall disclose only those portions of the recording that are relevant to* the person's request. *A person who receives* disclosure pursuant to this subsection *shall not record or copy the recording.*

N.C. Gen. Stat. § 132-1.4A(c) (2021) (emphasis supplied).

¶ 23 The release of recordings in the custody of a law enforcement agency under any section sequentially requires the petitioning party to show it qualifies and the trial court to so find the basis of that qualification under N.C. Gen. Stat. § 132-1.4A(c). *See* N.C. Gen. Stat. § 132-1.4A(f) ("Notwithstanding the provisions of subsection (g) of this section, *a person authorized to receive disclosure pursuant to subsection (c) of this section,* or the custodial law enforcement agency, may petition the superior court in any county where any portion of the recording was made for an order releasing the recording to a person authorized to receive disclosure.. . . *If the court determines that the person to whom release of the recording is requested is a person authorized to receive disclosure pursuant to subsection (c) of this section, the court shall consider the standards set out in subsection (g) of this section and any other standards the court deems relevant in determining whether to order the release of all or a portion of the recording.*") (emphasis supplied).

¶ 24 The restrictions and qualifications required to release under N.C. Gen. Stat. § 132-1.4A(c) are re-stated in the AOC-CV-271 Form, upon which the trial court

entered its judgment. The trial court *failed to check any of the boxes on* Petitioners' eligibility or relevance and failed to make any oral findings of eligibility to release on the transcript in open court. In the absence of threshold eligibility and statutorily-required findings, the order of the trial court is vacated, and the cause is remanded for additional findings of fact and conclusions of law consistent with the statute and this opinion.

¶ 25        We address additional arguments raised by GPD, because they are likely to occur on remand. GPD argues the trial court erred by not acting to avoid the release of "information of a highly sensitive personal nature." The trial court, while analyzing each standard of potential harm laid out by the statute, concluded under the fourth and fifth standards of N.C. Gen. Stat. § 132-1.4A(g)—"[r]elease would reveal information regarding a person that is of a highly sensitive and personal nature" and "release may harm the reputation or jeopardize the safety of a person"— *weighed against* the release of the petitioned recordings. The statute limits the trial court's discretion in analyzing the standards laid out therein and in determining, as a result of that analysis, whether to release any, all, or some or none of the petitioned recordings. Petitioner is entitled to release of law enforcement recordings, only after the trial court's finding the statutory category applicable to the petition.

¶ 26        The trial court stated in open court, at the close of its eight-standard analysis: "[T]his Court does not have the authority to [c]ensor this information absent a

legitimate or compelling state interest not to do so." The trial court also stated in the June Order: "This Court does not have the authority to censor the photos/recordings absent a compelling governmental interest and none was shown." This notion flips the express restrictions and application of the statute on its head.

¶ 27    N.C. Gen. Stat. § 132-1.4A(g) provides: *"The court shall release only those portions of the recording that are relevant to the person's request,* and *may place any conditions or restrictions* on the release of the recording that the court, in its discretion, deems appropriate." N.C. Gen. Stat. § 132-1.4A(g) (emphasis supplied).

¶ 28    This duty by the trial court was further-reiterated in *In re Custodial Law Enforcement Recording Sought by City of Greensboro*, in which this Court concluded a trial court "did not abuse its discretion in initially placing and later refusing to modify a restriction on release of body-cam footage" under N.C. Gen. Stat. § 132-1.4A(g). 266 N.C. App. 473, 479, 833 S.E.2d 1, 4 (2019).

¶ 29    The trial court erred by failing to make the required statutory findings. It is also clear from the record the court misapplied the statute and precedents by failing to exercise its discretion. "A court does not exercise its discretion when it believes it has no discretion or acts as a matter of law." *State v. Maness*, 363 N.C. 261, 278, 677 S.E.2d 796, 807 (2009) (citation omitted). Petitioner carries and maintains the burden of eligibility, specificity, and relevance under the statute. Respondents have no burden on remand. *See* N.C. Gen. Stat. § 132-1.4A(c).

## VI. Conclusion

The trial court failed to make required statutory findings to show under which statutory category Petitioner is entitled to release any of non-public and non-personnel law enforcement recordings records relevant to its request. The trial court also abused its discretion by not redacting irrelevant recordings and in authorizing the immediate and unrestricted release of all of law enforcement recordings requested in the 15 June 2021 order. The trial court also erred by stating and concluding "it has no discretion" under the statute. *Maness*, 363 N.C. at 278, 677 S.E.2d at 807.

The order appealed from is vacated and this cause is remanded for additional findings of facts and conclusions of law consistent with the statute and this opinion. The 13 July 2021 stay the trial court entered remains in effect pending final resolution. *It is so ordered.*

VACATED AND REMANDED.

Judge GORE concurs.

Judge ARROWOOD dissents by separate opinion.

ARROWOOD, Judge, dissenting.

I dissent from the majority opinion vacating and remanding the trial court's order allowing for the release of custodial law enforcement agency ("CLEA") recordings petitioned by a group of media companies ("petitioners").  Specifically, the majority misconstrues the plain language of the statute at issue, N.C. Gen. Stat. § 132-1.4A, in such a way that if allowed to stand it would foreclose members of the media from ever filing a successful petition for the release of any CLEA recording in the future.  Because I believe this was never the intent of the statute and is not supported by the plain language of the statue, I dissent.  For all the following reasons, I would affirm the trial court's order.

## I.    Background

The factual preamble of this case is widely known, as the events at issue made local, national, and international headlines.[1]  Accordingly, I find it important for our opinion to provide details as to what has led to this appeal.

On Saturday, 31 October 2020, the last day of early voting in the 2020 U.S. general elections, a group of approximately 200 people participated in a march to the polls, dubbed the "I Am Change" march, in Graham, North Carolina.  The march was secured with a permit and organized by Reverend Greg Drumwright ("Rev.

---

[1] Indeed, as the record on appeal provides, these events were covered not only by *The News & Observer*, *WRAL*, *WXII12*, *The Times News*, and *Elon News Network*, but also by *The Washington Post* and *Newsweek*.

Drumwright"), a Greensboro pastor and organizer. Also participating were then mayor of Burlington Ian Baltutis, two candidates for local office, and a number of elderly citizens and children. "With marchers walking by two's and three's, the procession snaked through neighborhoods on sidewalks and road shoulders, past one polling place and toward the early-voting site that had been the planned endpoint of Saturday's march."

¶ 35        "At one point, the marchers held a moment of silence in the street in honor of George Floyd, the Black man killed while in police custody in Minneapolis earlier th[at] summer." Then, "law-enforcement officers in riot gear and gas masks insisted demonstrators move off the street and clear county property, despite [the] permit authorizing their presence." "[D]eputies and police officers used pepper spray on the crowd and began arresting people." "Several children in the crowd were affected by the pepper spray."

¶ 36        "The crowd then moved" to a historic courthouse located in Court Square, "where speeches were being given." "But before speeches concluded, Alamance County sheriff's deputies began dismantling the sound system and telling the crowd to disperse." Deputies stated "that the permit had been revoked[,]" but "didn't give the crowd a reason for demanding that they disperse" or for the permit revocation. It would later be reported that the "generator and gas can" at issue "were forbidden under the terms of the event permit."

"Deputies arrested several organizers who refused to disperse, and Graham officers forced everyone out of Court Square, including bystanders, with additional pepper spray." "Both the police department and the sheriff's office have said their use of force was justified." According to the Graham Police Department's community engagement and diversity coordinator, "[w]hen deputies tried to disconnect the sound equipment, an officer was assaulted, and the officer deployed her pepper spray as she fell to the ground." At this point, she contends, marchers were " 'pulling and shoving' officers, who then used more pepper spray to get the crowd to disperse."

By the end of the day on 31 October 2020, "[a]t least 12 people were arrested[,]" including Rev. Drumwright, who would later face felony charges. "Most people were charged with failing to disperse on command." One woman "was charged with misdemeanor riot after she began to sing a freedom song into a megaphone outside the county jail, and a man was charged with attempting to stop officers from arresting her." *The News & Observer* reported "[n]one of the arrest records provided to reporters described an assault on an officer."

"The event garnered international media attention and led to two federal lawsuits[,]" one of which was commenced by Rev. Drumwright and "allege[d] voter intimidation and coercion by law enforcement." In the aftermath of this event, "national experts on policing mass demonstrations condemned the way Graham police and Alamance County sheriff's deputies handled the 'I Am Change' march,"

finding '[t]he use of pepper spray against a group that included children and older people" to be " 'stunning[.]' "

¶ 40      The majority otherwise correctly characterizes the procedural posture of this case. Indeed, on 2 March 2021, petitioners filed an amended petition under N.C. Gen. Stat. § 132-1.4A(g) in Alamance County Superior Court, seeking from the Alamance County Sheriff ("respondent-ACS") and the Graham Police Department ("respondent-GPD") (collectively "respondents") the "release of all law enforcement and other recordings leading up to, during and after the 'I am Change' march in Graham, NC, occurring on 31 October 2020 from the time the first contact was made with marchers, spectators or media on that date until the last member of law enforcement left the scene."

¶ 41      Thereafter, among other events, the trial court filed an "Order to Provide Custodial Law Enforcement Agency Recording for In-Camera Review" (the "March Order"), respondent-GPD provided an assortment of written objections to the petition, the trial court conducted an in-camera review of the CLEA recordings at issue, and a hearing was held on 10 June 2021, where respondents raised another assortment of objections to the petition.

¶ 42      At the close of all arguments, the trial court stated the following:

> I will inform everyone that this Court has given this decision great consideration and has not taken this decision lightly in any way. And I'll refer you to Alamance

CV 271.

. . . .

The Court having considered the applicability of all the standards of G.S. 132[ ]-1.4A(g), has determined the following: That the release of the information is necessary to advance a compelling public interest. The Court finds that there is a compelling public interest in the accountability and transparency of law enforcement officers and that this factor weighs in favor of release.

No. 2, The recording contains information that is otherwise confidential or exempt from disclosure or release under state or federal law. This Court finds this factor is not relevant and does not impact the Court's decision.

No. 3, The person requesting release is seeking to obtain evidence to determine legal issues in a current or potential court proceeding. The Court finds this factor is not relevant and does not impact this decision.

No. 4, Release would reveal information regarding a person that is of a highly sensitive and personal nature. This Court finds that this factor weighs against release.

No. 5, That release may harm the reputation or jeopardize the safety of a person. This Court finds this factor also to weigh against release.

No. 6, That release would create a serious threat to the fair and orderly administration of justice. This court finds that this factor does weigh in favor of release.

No. 7, Confidentiality is necessary to protect an active internal criminal investigation or potential internal or criminal investigation. This Court finds this factor is not relevant and does not impact the Court's decision.

¶ 43     Additionally, the trial court made the following statement as to the eighth

factors of its analysis:

> No. 8, There is good cause shown to release all portions of
> the recording. This Court finds that the photos and the
> recordings speak for themselves, and this Court does not
> have the authority to [c]ensor this information absent a
> legitimate or compelling state interest not to do so. Most
> importantly this Court gives great weight to transparency
> and public accountability with regard to police action and
> considers a failure to release this information to possibly
> undermine the public interest and confidence in the
> administration of justice.

The trial court then ordered the release "of all photos and recordings."

The trial court filed a written "Order on Petition for Release of Custodial Law Enforcement Agency Recording" on 15 June 2021 (the "June Order"), in which it made determinations consistent with its ruling in open court and added:

> The photos/recordings speak for themselves. This Court
> does not have the authority to censor the photos/recordings
> absent a compelling governmental interest and none was
> shown. This Court gives great weight to transparency and
> public accountability of police action and failure to release
> the photos/recordings would undermine the public trust
> and confidence in the administration of justice.

Accordingly, the trial court ordered for respondents to release "ALL recordings and photographs as indicated on the submissions made to the Court by the custodial law enforcement agencies and without redaction or alteration on or before 2:00 p.m. on Friday, June 25, 2021."

On 23 June 2021, respondent-GPD gave notice of appeal from the June Order. Pertinently, this appeal made no mention of the March Order. Respondent-GPD filed a "Motion for Stay of Order Directing Release of Custodial Law Enforcement Recording Pending Appeal" on 25 June 2021, which it amended on 30 June 2021 and filed along with a memorandum in support of the motion. In this memorandum, respondent-GPD argued, among other things, that the trial court had "mistakenly placed the burden of providing a compelling public interest on the custodial law enforcement agency." Both respondents filed a joint motion to amend the June Order on 6 July 2021. Petitioners filed a Motion to Show Cause also on 6 July 2021. On 13 July 2021, the trial court granted respondent-GPD's motion to stay the June Order, denied respondents' motion to amend the June Order, and denied petitioners' Motion to Show Cause. Respondent-ACS did not appeal.

## II. Discussion

On appeal, respondent-GPD argues: that petitioners' petition was overly broad under N.C. Gen. Stat. § 132-1.4A; that the trial court "improperly imposed de-facto burden shifting" onto respondents; that the trial court "misapplied the law and imposed the incorrect standard . . . [i]n ordering the unredacted release of all portions of all videos"; that the trial court "erred and abused its discretion in failing to take reasonable steps to protect against the release of information of a highly sensitive personal nature"; that the trial court abused its discretion by releasing irrelevant and

extraneous footage; and that, in abusing its discretion, the trial court "frustrated the legislative intent behind [N.C. Gen. Stat. §] 132-1.4A."

## A.    Jurisdiction

As a preliminary matter, the majority fails to address a jurisdictional issue presented by this appeal. Respondent-GPD appealed from the June Order and designated its appeal accordingly. In this appeal, respondent-GPD makes no mention of the March Order. However, in its appellate brief, respondent-GPD raises arguments—specifically, that the trial court erred by engaging in "de-facto burden shifting" and that the trial court frustrated the legislative intent of N.C. Gen. Stat. § 132-1.4A—it had not argued in relation to the June Order. Rather, these arguments appeared in respondent-GPD's submission of the petitioned recordings, which related to the March Order, and in its amended motion for staying the June Order, which, by its very nature, followed the June Order.

Under our Rules of Appellate Procedure, any notice of appeal:

> shall specify the party or parties taking the appeal; shall designate the judgment or order from which appeal is taken and the court to which appeal is taken; and shall be signed by counsel of record for the party or parties taking the appeal, or by any such party not represented by counsel of record.

N.C.R. App. P. 3(d).

"The appellant's compliance with the jurisdictional rules governing the taking of an appeal is the linchpin that connects the appellate division with the trial division and confers upon the appellate court the authority to act in a particular case." *Dogwood Dev. & Mgmt. Co., LLC v. White Oak Transp. Co.*, 362 N.C. 191, 197, 657 S.E.2d 361, 364-65 (2008) (citations omitted). "A jurisdictional default, therefore, precludes the appellate court from acting in any manner other than to dismiss the appeal." *Id.* at 197, 657 S.E.2d at 365 (citations omitted).

Because part of respondent-GPD's appeal is defective under our Rules of Appellate Procedure, and those defects are jurisdictional in nature, I would have dismissed the arguments regarding burden shifting and frustration of legislative purpose and proceeded with reviewing respondent-GPD's remaining arguments on appeal. *See id.*

### B.     Standard of Review

As an additional preliminary matter, the majority fails to address the fact that, among its appellate arguments, respondent-GPD also claims that the appropriate standard of review in this case is *de novo*. This is incorrect.

The statute at issue itself expressly states: "The [trial] court shall release only those portions of the recording that are relevant to the person's request, and may place any conditions or restrictions on the release of the recording that the court, *in*

*its discretion*, deems appropriate." N.C. Gen. Stat. § 132-1.4A(g) (2021) (emphasis added). Accordingly, this Court would review for abuse of discretion.

¶ 53 Having eliminated some of respondent-GPD's arguments for failure to comply with our Rules of Appellate Procedure, the only remaining arguments this Court should have reviewed may be summed as follows: whether the trial court abused its discretion in releasing all the petitioned footage, "extraneous" footage, or footage containing "information of a highly sensitive personal nature."

## C.    N.C. Gen. Stat. § 132-1.4A

¶ 54 The majority correctly cites the following: "The best indicia of [legislative] intent are the [plain] language of the statute . . . , the spirit of the act and what the act seeks to accomplish." *Coastal Ready-Mix Concrete Co. v. Bd. of Comm'rs*, 299 N.C. 620, 629, 265 S.E.2d 379, 385 (1980) (citation omitted). "When construing legislative provisions, this Court looks first to the plain meaning of the words of the statute itself[.]" *State v. Ward*, 364 N.C. 157, 160, 694 S.E.2d 729, 731 (2010). However, what the majority fails to do is to actually apply this precedent; as a result of this failure, the majority misconstrues the plain language of N.C. Gen. Stat. § 132-1.4A, with avoidable and unnecessary results.

¶ 55 The majority contends that "[t]he release of recordings in the custody of a law enforcement agency under any section sequentially requires the petitioning party to show it qualifies and the trial court to so find the basis of that qualification under

N.C. Gen. Stat. § 132-1.4A(c)." This is simply not correct.

¶ 56        Subsection (c) of N.C. Gen. Stat. § 132-1.4A, which addresses disclosure of

CLEA recordings, reads as follows:

> (c) *Disclosure*; General.--Recordings in the custody of a law enforcement agency shall be *disclosed* only as provided by this section. . . .
>
> A person requesting *disclosure* of a recording must make a written request to the head of the custodial law enforcement agency that states the date and approximate time of the activity captured in the recording or otherwise identifies the activity with reasonable particularity sufficient to identify the recording to which the request refers.
>
> The head of the custodial law enforcement agency *may only disclose* a recording to the following:
>
> (1) A person whose image or voice is in the recording.
>
> (2) A personal representative of an adult person whose image or voice is in the recording, if the adult person has consented to the disclosure.
>
> (3) A personal representative of a minor or of an adult person under lawful guardianship whose image or voice is in the recording.
>
> (4) A personal representative of a deceased person whose image or voice is in the recording.
>
> (5) A personal representative of an adult person who is incapacitated and unable to provide consent to disclosure.

N.C. Gen. Stat. § 132-1.4A(c) (emphasis added). In summary, subsection (c) of the statute provides a list of those persons entitled to *disclosure* of CLEA recordings, which is separate and distinct from *release* of said recordings. This distinction is further emphasized by the existence and contents of subsections (f) and (g).

Subsection (f) reads as follows:

> (f) *Release* of Recordings *to Certain Persons*; *Expedited Process*.--Notwithstanding the provisions of subsection (g) of this section, *a person authorized to receive disclosure pursuant to subsection (c) of this section*, or the custodial law enforcement agency, *may petition the superior court in any county where any portion of the recording was made for an order releasing the recording to a person authorized to receive disclosure. . . .* If the petitioner is a person authorized to receive disclosure, notice and an opportunity to be heard shall be given to the head of the custodial law enforcement agency. Petitions filed pursuant to this subsection shall be set down for hearing as soon as practicable and shall be accorded priority by the court.
>
> *The court shall first determine if the person to whom release of the recording is requested is a person authorized to receive disclosure pursuant to subsection (c) of this section. . . . If the court determines that the person is not authorized to receive disclosure pursuant to subsection (c) of this section*, there shall be no right of appeal and *the petitioner may file an action for release pursuant to subsection (g) of this section.*

N.C. Gen. Stat. § 132-1.4A(f) (emphasis added). In summary, subsection (f) addresses how a person who is entitled to *disclosure* of CLEA recordings under subsection (c) would go about petitioning for the *release* thereof, and also states how all other

persons excluded by subsection (c) are provided a separate means to file an action for release, articulated by subsection (g).

¶ 58 Subsection (g) of the statute addresses exactly how any other person or entity excluded by subsection (c) would go about petitioning for the release of CLEA recordings; it speaks for itself and reads, in pertinent part, as follows:

> (g) *Release of Recordings; General*; Court Order Required.--Recordings in the custody of a law enforcement agency shall only be released pursuant to court order. Any custodial law enforcement agency or any person requesting release of a recording may file an action in the superior court in any county where any portion of the recording was made for an order releasing the recording.

N.C. Gen. Stat. § 132-1.4A(g) (emphasis added).

¶ 59 Though the statute is long-winded, it is not complex. The statute plainly distinguishes between those persons who are entitled to disclosure of CLEA recordings, and those who are not; a person who is entitled to disclosure under subsection (c) may petition for release under subsection (f); all other persons excluded by subsection (c) may petition for release under subsection (g).

¶ 60 Indeed, such distinction, which the majority either ignores or fails to perceive, is plainly summarized in each subsection header: "Disclosure; General" for subsection (c); "Release of Recordings to Certain Persons; Expedited Process" for subsection (f); and "Release of Recording; General" for subsection (g).

This plain reading of N.C. Gen. Stat. § 132-1.4A was further reiterated by this Court in *In re Custodial Law Enforcement Recording Sought by City of Greensboro*, a case which the majority cites, in the following statement:

> Our General Assembly has provided that police body-cam footage is neither a public nor a personnel record, [under] N.C. Gen. Stat. § 132-1.4A(b) . . . , and that only those depicted in the video and their personal representatives have an absolute right to view the footage, [under] N.C. Gen. Stat. § 132-1.4A(c) . . . . *The General Assembly also provided that anyone else wanting to view police body-cam footage may not do so unless that individual obtains a court order*[,] [under] N.C. Gen. Stat. § 132-1.4A(g) . . . .

*Matter of Custodial L. Enf't Recording Sought by City of Greensboro*, 266 N.C. App. 473, 475, 833 S.E.2d 1, 2 (2019) (emphasis added) (citing N.C. Gen. Stat. § 132-1.4A(b), (c), (g) (2016)).

Here, petitioners do not fall within any of the enumerated categories of persons entitled to disclosure as a matter of right provided by subsection (c) of the statute. *See* N.C. Gen. Stat. § 132-1.4A(c). This, however, does not categorically bar petitioners from being able to seek, and possibly obtain, release of CLEA recordings. Rather, petitioners must obtain a court order. N.C. Gen. Stat. § 132-1.4A(g). That is precisely what petitioners have done here: because they were not entitled to disclosure as a matter of right, they petitioned the trial court under subsection (g) in hopes of a favorable order. Accordingly, the majority's contention that the case should be remanded due to an "absence of statutorily-required findings" is incorrect, as it

wrongly applies the requirements for identifying whether a petitioner is a person enumerated by subsection (c) to these petitioners.

¶ 63        The majority also suggests that a literal reading of the plain language of N.C. Gen. Stat. § 132-1.4A may lead to "absurd results[.]" *See State v. Beck*, 359 N.C. 611, 614, 614 S.E.2d 274, 277 (2005) (citation and quotation marks omitted). Rather, it is the majority's unique interpretation of the statute that has led to an absurd result. Indeed, the majority's mischaracterization, and subsequent misapplication, of the plain language of N.C. Gen. Stat. § 132-1.4A wholly ignores subsection (g); as a result, the majority would have it so that those limited persons entitled to disclosure under subsection (c) would also be the only persons entitled to release.

¶ 64        The majority's interpretation of N.C. Gen. Stat. § 132-1.4A is not only unfounded, but it is also unrequested. At no point throughout this entire proceeding has respondent-GPD argued that petitioners are excluded, by statute, from petitioning for the release of CLEA recordings or that the trial court should have made a determination as to whether petitioners constituted persons entitled to disclosure under subsection (c). Indeed, it is so obvious from the plain reading of the statute that subsection (c) does not apply to petitioners that it should go without saying. In other words, the issue was never raised, and was thus unpreserved for appeal. N.C.R. App. P. 10(a)(1). Instead, the majority has taken upon itself, *sua*

*sponte*, the task of both arguing and concluding this line of reasoning, something this Court is historically prohibited from doing. *See id.*

Most importantly and poignantly, however, is that the consequence of the majority's reasoning is dangerous: such an interpretation of N.C. Gen. Stat. § 132-1.4A would ensure that members of the media would *never* be allowed to petition the superior court for release of CLEA recordings, let alone obtain them via court order. I see no support in the statute for such a draconian result.

### D. Abuse of Discretion

The majority contends that the N.C. Gen. Stat. § 132-1.4A "limits the trial court's discretion in analyzing the standards laid out therein and in determining, as a result of that analysis, whether to release any, all, or some or [sic] none of the petitioned recordings." Setting aside the incorrect depiction of the trial court's discretion as "limited," this statement again, misconstrues the plain language of the statute.

N.C. Gen. Stat. § 132-1.4A(g) provides:

> The request for release must state the date and approximate time of the activity captured in the recording, or otherwise identify the activity with reasonable particularity sufficient to identify the recording to which the action refers. The court may conduct an in-camera review of the recording. *In determining whether to order the release of all or a portion of the recording, in addition to any other standards the court deems relevant, the court shall consider the applicability of all of the following*

*standards:*

(1) Release is necessary to advance a compelling public interest.

(2) The recording contains information that is otherwise confidential or exempt from disclosure or release under State or federal law.

(3) The person requesting release is seeking to obtain evidence to determine legal issues in a current or potential court proceeding.

(4) Release would reveal information regarding a person that is of a highly sensitive personal nature.

(5) Release may harm the reputation or jeopardize the safety of a person.

(6) Release would create a serious threat to the fair, impartial, and orderly administration of justice.

(7) Confidentiality is necessary to protect either an active or inactive internal or criminal investigation or potential internal or criminal investigation.

(8) There is good cause shown to release all portions of a recording.

The court shall release only those portions of the recording that are relevant to the person's request, and may place any conditions or restrictions on the release of the recording that the court, in its discretion, deems appropriate.

N.C. Gen. Stat. § 132-1.4A(g) (emphasis added). The statute speaks clearly: it requires the trial court to consider eight factors and allows it to consider any additional factors of its own making.

¶ 68        The majority takes issue with the fact that the trial court stated in its ruling that the fourth and fifth statutory factors "weighed against" releasing the CLEA recordings to petitioners, and thus concluded that petitioners are "entitled to release only after finding the statutory category that is applicable to the petition." This statement is not only incorrect, but misconstrues both the statute and the trial court's discretion.

¶ 69        First, the trial court does not have limited discretion. Rather, subsection (g) of the statute provides mandatory factors for the trial court to consider in its analysis, and also allows for the trial court to exercise its discretion in considering additional factors of its own making. Second, nowhere within the plain language of subsection (g) does the statute state that a finding that one or two factors weigh against the release of CLEA recordings is in itself determinative; nor, in fact, does the majority opinion explain away its conclusion.

¶ 70        Indeed, here, during the hearing, the trial court walked through each of the eight standards laid out by the statute with careful consideration. In so doing, the trial court determined whether the specific standard was relevant to the case *sub judice*, and, if so, whether it weighed in favor of or against release of the petitioned

CLEA recordings. The trial court also "deem[ed] [it] relevant" to consider "other standards[,]" *see id.*, as permitted by the statute, by giving "great weight to transparency and public accountability with regard to police action" and in "consider[ing] a failure to release this information to possibly undermine the public interest and confidence in the administration of justice." Having considered all these standards, the trial court ultimately concluded, in its discretion, to authorize the release of all the petitioned CLEA recordings. Accordingly, the trial court did not abuse its discretion in authorizing the release of all the requested recordings to petitioners.

## E.    Authority of the Trial Court

¶ 71        The majority agrees with respondent-GPD's contention that the trial court misapprehended the law and applied an incorrect standard when it stated that it had no authority to censor the recordings absent a compelling government interest. Indeed, the trial court stated in open court, at the close of its eight-standard analysis: "[T]his Court does not have the authority to [c]ensor this information absent a legitimate or compelling state interest not to do so." The trial court also stated in the June Order: "This Court does not have the authority to censor the photos/recordings absent a compelling governmental interest and none was shown."

¶ 72        N.C. Gen. Stat. § 132-1.4A(g) provides: "The court shall release only those portions of the recording that are relevant to the person's request, and may place any

conditions or restrictions on the release of the recording that the court, in its discretion, deems appropriate." *Id.* The majority construes this portion of the statute to mean that it could never be possible for all petitioned CLEA recordings to be relevant to a petitioner's request. However, not only does the majority fail to explain this interpretation in its opinion, but such an interpretation goes against both the plain language of the statute and the plain significance of a trial court's discretion. Indeed, subsection (g) clearly states that the trial court is permitted, and not required, to "place any conditions or restriction on the release" that it, "*in its discretion*, deems appropriate." *Id.* (emphasis added).

¶ 73        Although the trial court may have made an inartful statement as to the controlling law, it is clear from the record that it did not misapply that same law. Our Supreme Court encountered a similar circumstance in *State ex rel. Utilities Comm'n v. Carolina Util. Customers Ass'n, Inc.*, 336 N.C. 657, 446 S.E.2d 332 (1994) There, the Carolina Utility Customers Association ("CUCA") argued, among other things, that the Utilities Commission (the "Commission") had "misapprehended the scope of its discretion under N.C.G.S. § 62-158 in making the decision to grant or deny Public Service Company's petition" to establish a natural gas expansion fund. *Id.* at 664, 446 S.E.2d at 337. The Commission had stated in its order, " '[o]nce we have found unserved areas that are otherwise infeasible to serve, . . . the General Assembly intends for the Commission to exercise limited discretion as to whether a fund should

be created for that particular natural gas utility.' " *Id.* (alterations in original). "CUCA argue[d] that the Commission in fact had wide discretion to determine whether to authorize the establishment of an expansion fund . . . and that the Commission's refusal to exercise its full discretion caused its failure to address CUCA's legal and factual position." *Id.* at 664-65, 446 S.E.2d at 337. "Furthermore, CUCA contend[ed] that the order should be reversed because it constitutes a Commission decision based upon a misinterpretation of applicable law." *Id.* at 665, 446 S.E.2d at 337 (citation omitted).

¶ 74    The Supreme Court disagreed, finding that "the record d[id] not indicate that the Commission viewed itself as without discretion to grant or deny the petition. The Commission in fact stated that it was to exercise 'limited discretion,' as opposed to no discretion whatsoever." *Id.* In fact, the Commission had "held a hearing on the matter and received testimony from numerous witnesses who were either in favor of or opposed to the creation of the expansion fund." *Id.* "After doing so, the Commission issued an order that included extensive findings of fact" and "concluded that 'the creation of an expansion fund for the [Public Service] Company is in the public interest.' " *Id.* "In order to implement [N.C. Gen. Stat. § 62-158], the Commission adopted Commission Rule R6-82," which set out "limitations . . . in keeping with the language of the enabling statute, N.C.G.S. § 62-158." *Id.* at 666, 446 S.E.2d at 337-38. "The plain language of this rule indicates that the Commission had a proper view

of its discretion in making a determination of whether to authorize the creation of an expansion fund[.]" *Id.* at 666, 446 S.E.2d at 338. Thus, the Supreme Court concluded "that the Commission did not act under a misapprehension of applicable law and that it granted the petition and established the expansion fund pursuant to a proper interpretation of its authority and discretion to do so." *Id.*

¶ 75        In the case *sub judice*, N.C. Gen. Stat. § 132-1.4A expressly allows for a trial court to release all or a portion of any sought recording; setting conditions or redacting said recording is permitted, but not mandated. The trial court analyzed each statutory standard with careful consideration and, based on its detailed analysis, concluded that the only acceptable outcome was to order for the release of all of the petitioned CLEA recordings. Furthermore, the very fact that the trial court considered additional standards—namely, transparency and public accountability—in its analysis, as allowed by statute, indicates that it exercised its discretion scrupulously. Thus, the trial court "did not act under a misapprehension of applicable law" and filed its order "pursuant to a proper interpretation of its authority and discretion to do so." *See id.*

¶ 76        In summary, the majority's contention that the trial court's release of all petitioned CLEA recordings could only have been a result of a misapplication of the law is of no moment, as the trial court behaved scrupulously and the controlling statute plainly allows for this outcome.

### III.    Conclusion

For the foregoing reasons, because the majority has misconstrued and misinterpreted the unambiguous and plain language of N.C. Gen. Stat. § 132-1.4A and has consequently misapplied the statute to this appeal, I dissent from the majority opinion and would affirm.